---

# NEW–YORK COMMON PLEAS.

## CHARLES J. MCDONALD agt. CORNELIUS A. GARRISON AND CHARLES MORGAN.

On an order for the examination of a witness *conditionally*, the statute does not require that the *judge* should write down the examination of the witness *himself*, or, in case he does not, that he make an order to show cause why the testimony should not be taken before a *referee*.

He may employ an *amanuensis* to write down the testimony, and by seeing that every answer or declaration of the witness required by either party is included in it; in reading it over to the witness; in seeing that he duly subscribes it; in administering the proper oath or affirmation to the witness, of the truth of the answers given by him, and included in the deposition; and adding his own certificate that the above requirements have been complied with, is a taking of the deposition within the design and intent of the statute.

*General Term, July,* 1859.

APPEAL from an order at special term denying a motion to suppress a deposition.

> JOHN T. DOYLE, *for plaintiff.*
> I. T. WILLIAMS, *for defendants.*

By the court—DALY, F. J. The statute declares that the judge shall take the deposition; that it shall be carefully read to, and subscribed by, the witness, and that it shall be certified by the officer taking the same. The amendment of 1851 further provides that, when an application is made for an order for the examination of the witness conditionally, the officer, instead of directing the examination to be had before him, may make an order requiring the adverse party to show cause why the examination should not be taken by a referee to be appointed by the officer. In this case the order was made for the examination of the witness before me, at chambers, upon a day named, at which time the parties appeared, and the adverse party insisted that I should write down the examination of the witness myself, or else that I should appoint a referee to take the testimony. To have written down the testimony would have obliged me to have devoted myself for several days to the matter, to the total exclusion of all the other chamber and special term business, a large amount of which arises in this court each day, that must be immediately and at once disposed of; and not having in the first instance made an order for the defendant to show cause why the testimony of the witness should not be taken by a referee, but an order requiring the adverse party to appear before me, and attend the examination of the witness, I did not feel called upon, when the parties and the witness were before me upon a proper order, to delay the examination of the witness by then making an order to show cause why the examination should not be taken by a referee, even if an order to that effect could then have been properly made; and I accordingly directed that the examination should be conducted according

to the practice that has prevailed in this court since the statute was enacted, which practice, as a judicial interpretation of the statute, has been sanctioned and approved by the judges of this court for a period now of thirty years. After, therefore, administering an oath to the witness to the effect that he would well and truly answer all such questions as should be put to him, I ordered that the direct examination of the witness should be written down by the plaintiff's attorney, and the cross-examination by the defendant's attorney; or that, if the parties preferred it, I would appoint the deputy clerk of the court, or any other person they might select, to act as my amanuensis, and write down the testimony; but the defendants' attorney expressing no preference, but confining his objection to the point that I must write down the testimony myself, or else appoint a referee to take it, I directed it to be written down in the manner above stated, and declared, that if any difference occurred in the course of the examination, either as to the propriety of the questions put, or as to the answers to be written down, or as to any inaccuracy in the writing down of any question or answer that the parties should refer to me; and that, when the direct and cross-examination was fully written down, I would carefully read the deposition of the witness before it was subscribed by him, and certified by me, as the officer taking it. The examination of the witness was accordingly so conducted—the counsel for the parties respectively writing down both question and answer. The examination lasted several days, and when completed was carefully read over to the witness. The counsel for the plaintiff called upon the defendants' counsel to state whether he made any objection that the evidence was not correctly and fairly written down; but defendants' counsel put his objection solely upon the ground that the deposition had not been written down by the judge, or by a judge of the court, or ordered to be taken before a referee. The deposition was then carefully read to the witness, and duly certified, after which the defendant made a motion before Judge HILTON to suppress the deposition for the reason above stated, which

McDonald agt. Garrison and Morgan.

motion was denied, and from which decision the defendant now appeals.

The statute makes no provision as to the mode in which the deposition is to be taken, other than it is to be taken by the officer, carefully read to the witness, subscribed by him, and certified by the officer taking the same. In no other respect does it enact how he shall take it, and reference must, therefore, be had to the practice which prevailed before the statute was passed, to ascertain the mode that was then in use; for if, in this respect, the statute is silent, the practice which existed when the statute was enacted continues in force.

In *Wyche's Practice, p.* 144—the first book that appeared in this state (1794) upon the practice of the supreme court—there is a section devoted to the course of procedure upon the examination of witnesses about to go abroad, in which this passage occurs: " At the time appointed, to take the witnesses to the judge—and the answers must be wrote down *under his inspection and control ;*" and in *Dunlap's Practice (Vol. 1, p.* 551), which was the book in general use when the Revised Statutes were enacted, of which this statute formed a part—for there was no statute before, except one to perpetuate the testimony of aged or infirm witnesses in actions affecting the title to land (1 *Rev. Laws,* 455)—the mode of procedure on the examination of witnesses *de bene esse* is thus laid down: " The parties may then respectively examine and cross-examine the witness in the presence of the judge, and *take down his answers in writing.* The examination being concluded, the witness signs the deposition, and the judge adds his jurat." These citations show that it was not the practice for the judge to write down the deposition, but that it was taken in his presence, and under his supervision and control; so that, if any question was raised, or any objection made, he might order or direct what should be done; and by reference to the English authorities upon the examination of witnesses *de bene esse,* it does not appear that any such practice ever existed as that of the judge writing down the testimony of the witness. (2 *Tidd's Pr.* 810, *9th ed.*)

In England the witness is taken to the judge's chamber, and

sworn by the judge. He is then taken before the judge's clerk, and examined upon interrogatories and cross-interrogatories previously prepared, as upon commissions, and the clerk writes down his answers, and is paid for his services by the attorneys, to whom he furnishes copies at so much per sheet, together with a fee for filing their interrogatories. (*Impey's Pr. of Com. Pl.* 370, *7th ed.; id. King's Bench,* 330, *10th ed.*) To the requirements of the former practice in this state, the statute added that the deposition should be carefully read to the witness, and the judge must certify that that has been done.

The words of the present statute are, that the judge shall proceed to the examination of the witness, and shall take his deposition, in which deposition shall be inserted any answer or declaration of such witness, which either of the parties shall require to be included therein. I do not understand the words, "shall take the deposition," as changing the former practice to the extent of requiring the judge actually to write down the deposition himself. He may take the deposition, in the sense of the statute, in seeing that every answer or declaration of the witness, required by either party, is included in it; in reading it over to the witness; in seeing that he duly subscribes it; in administering the proper oath or affirmation to the witness of the truth of the answers given by him, and included in the deposition, and adding his own certificate that the above requirements have been complied with. This, in my judgment, is a taking of the deposition within the design and intent of the statute.

To require the judge to write down the deposition would be, in many instances, to render the statute practically inoperative. Frequently a party has very short notice of the intended departure of a witness—sometimes but a day, sometimes but a very few hours—and unless the examination can be completed within a limited time it may involve the loss of the testimony of the witness, who may be away before the compulsory power with which the officer is clothed can be resorted to or made effectual to detain him It is not unusual

in this court for three of these examinations to be going on at the same time, which could not be done if the judge had to write down each deposition, unless the three judges of the court stopped the cases on trial, or argument, in which they might be engaged, to attend exclusively to this business, or unless the witnesses attending for examination waited until the judge holding chambers found time to write down each deposition, which, in the case of an examination like this, extending over several days, would be to the neglect or putting off, to the serious inconvenience of a great body of suitors, of the large amount of chamber and special term business, which comes up for disposition every day before the single judge who attends to this branch of the business of this court.

No object would be accomplished by the judge writing down the testimony. If the judge is to read it over to the witness, then it matters not in whose handwriting it is. It is the aim of the statute, that nothing shall be inserted except what the witness means and intends to swear to; and that end is fully attained if the judge reads over the deposition to the witness, who then knows, before he subscribes, whether his answers have been correctly taken down or not, and an opportunity is offered to make any correction before the judge finally certifies it as the deposition of the witness taken by him.

It is suggested, that if the judge cannot write down the deposition, he may order it to be taken by a referee; but it is to be remembered that this statute was in operation more than twenty years before this amendment was added; and the practice under the statute, at least in this court, was well settled long before 1851. I suppose that the object of this amendment was to provide for cases, especially in other parts of the state, where it might be difficult or impossible for the judge to attend before the departure of the witness, and supervise the taking of his deposition; or where the parties and witness were all residing in a distant part of the district from that where the judge, at the time, was engaged in the discharge of his duties, in which case the convenience of all parties would

McDonald agt. Garrison and Morgan.

be greatly promoted by allowing the deposition to be taken by a referee; a state of things which could rarely arise in this city, where a judge is sitting every day in each of the courts, specially to attend to this kind of business. I cannot suppose that it was the design of this amendment to remedy an inconvenience arising from a duty assumed to be enjoined by the statute, that the judge must himself write down the deposition of the witness; but that if it had ever been supposed that the statute contained such a requisition, we should not have waited twenty years for an amendment to remedy the inconvenience.

The order should be affirmed.